This suit results from a collision between a street car, owned and operated by the New Orleans Public Service, Inc., and an omnibus, owned by Joseph Capone, doing business under the name of Capone Bus Line, and operated at the time by his employee, Joseph Pizzettier. The collision occurred at the intersection of Ursuline and N. Rampart Streets, in the City of New Orleans, when the bus ran into the street car near its rear end, after having struck a post on the neutral ground of Rampart Street.
The plaintiff, Miss Anna Blanchard, was a passenger in the bus and, as a result of the impact with the street car, was thrown forward and sustained certain physical injuries. She sues the New Orleans Public Service, Inc., and Joseph Capone claiming the sum of $9,275 for her physical injuries and consequential damages. *Page 742 
There was judgment below dismissing the New Orleans Public Service, Inc., and awarding Miss Blanchard $2,000 for all items of damage against Joseph Capone, the operator of the bus line. The Charity Hospital, where Miss Blanchard was given emergency treatment, intervened and was awarded a judgment of $7, the amount stipulated as being due it. Both the defendant Capone and the plaintiff, Miss Blanchard, have appealed.
The street car of the defendant, New Orleans Public Service, Inc., was in charge of Mrs. Brunell T. Viola, as "motorette" and Eugene Hoeltke as conductor. The accident occurred at about 6:45 A.M., on July 16, 1943. The street car, immediately preceding the accident, had stopped in Ursuline Street, a few feet back of the property line on Rampart Street, in order that a switch in the track could be adjusted so as to permit it to continue on its course across Rampart Street. Mrs. Viola says that she looked to her left or in the direction from which the Capone bus was approaching and saw the bus about a city block away from the intersection, traveling at a moderate rate of speed, whereupon she proceeded to move forward and had almost crossed the lakeside roadway of Rampart Street, a wide thoroughfare divided by a neutral ground with a roadway on each side, when the bus collided with the rear end of the street car.
Hoeltke, the conductor, corroborated Mrs. Viola with respect to the stopping of the street car and its subsequent slow progress toward the neutral ground. He says he first saw the bus when it was between 30 and 40 feet away from the street car at a time when the front end of the street car had reached the neutral ground. He saw the bus driver rear back in his seat as if trying to stop the bus, saw the bus run into the post on the neutral ground and then into the street car. After the accident Mrs. Viola and Hoeltke testified that they spoke to the bus driver and asked him why he did not stop and that he replied that he was unable to do so because of defective brakes.
Mrs. Viola and Hoeltke are corroborated by a disinterested witness, Mr. Henry E. Vierra, who lived a short distance from the intersection where the accident occurred, tie testified that the street car was half way over the neutral ground when he heard the crash and saw the street car rocking from side to side. He went over to the scene of the accident and heard the driver of the bus say that he could not stop because he had no brakes.
The bus driver, Joseph Pizzettier, was ill in an Army hospital in Topeka, Kansas, and at the time of the trial was unable to testify in person or by deposition.
Mrs. Frank Bazile and Miss Mabel Pizzettier, a sister of the bus driver, who were passengers in the bus, testified on behalf of the defendant Capone and to the effect that the street car entered the intersection when the bus was very close. Mrs. Bazile puts it at ten feet away from the street car tracks and Miss Pizzettier did not know where the bus was when the street car entered Rampart Street, but testified that she saw the street car when the bus was ten feet away from the street car tracks.
The position of the defendant Capone is that the street car entered Rampart Street, a right of way thoroughfare, when it was imprudent for it to do so. In other words, when the bus was too near the street car to permit of a safe crossing of Rampart Street. It is admitted that the street car stopped at the intersection, but it is contended that the motorette Was imprudent in that she did not look but once in the direction of the bus when she says it was a block away before proceeding to cross Rampart Street. So far as the brakes are concerned, it is denied that they were not in proper condition. Mr. Capone, who made the next regular run of the bus after the accident, testified that he found nothing wrong with the brakes. The street car could not have been very close to the bus when it started to cross Rampart Street, because of the fact that it had almost crossed the nearest roadway when it was struck in the rear by the bus.
[1, 2] We agree with the learned trial judge that the accident was entirely due to the negligence of the bus driver. The testimony clearly preponderates to that effect, the careening of the bus before the accident, its running into the post on the neutral ground and caroming off to hit the street *Page 743 
car would indicate that it was traveling too fast and that the statement of its driver to the effect that the brakes were in bad condition was correct. We find no fault with the action of the motorette in not taking a second look in the direction of the bus since, when she did look, it was a city block distant and moving at a moderate rate of speed, indicating that there was ample time for her to cross the intersection without colliding with the bus.
[3] On the question of quantum, Miss Blanchard was allowed $2,000 by the learned judge of the district court. This amount is said to be inadequate by the plaintiff and excessive by the defendant. Miss Blanchard, an unmarried woman, twenty-seven years of age, suffered a broken nose. She has a permanent but slight scar and a small "nasal hump" resulting in a slight but permanent disfigurement.
Dr. Monte F. Meyer, who treated Miss Blanchard, stated that he first saw her at the Hotel Dieu the day after the accident. She had been treated the day before at the Charity Hospital when the fracture of her nose had been set. Dr. Meyer re-examined her nose and found "the position as good as could be accomplished". He treated her periodically for a period of six weeks or two months. Miss Blanchard's right nasal passage, Dr. Meyer says, is much larger than her left with the result that there is an impairment in the nasal function. He says the hump on Miss Blanchard's nose is about one-sixteenth of an inch in height and that the only way that it can be removed is by plastic surgery at a cost of between $350 and $500. The scar on her nose is about three-quarters of an inch in length and in the shape of an "s". It is not visible at a distance. Dr. Meyers sent Miss Blanchard a bill for his services in the sum of $125.
There is no doubt in our opinion from the testimony adduced that Miss Blanchard suffered severely during the operation upon her fractured nose and that she will bear a permanent scar which is a cosmetic blemish. It was more disfiguring, however, during the year or two after the accident and before the trial of the case below than it is at the present time. Our conclusion is that the amount awarded by the trial court is correct, consequently and
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.