114 So.2d 62 (1959)
James V. CARLISLE, Individually, etc., Plaintiff-Appellant,
v.
PARISH OF EAST BATON ROUGE, Defendant-Appellee.
No. 4859.
Court of Appeal of Louisiana, First Circuit.
June 30, 1959.
Rehearing Denied August 31, 1959.
*63 Hynes Mathews & Lane, Baton Rouge, for appellant.
R. Gordon Kean, Jr., City Atty., John V. Parker, Asst. City Atty., Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, and TATE, JJ.
TATE, Judge.
Plaintiff's minor daughter, while operating his car on March 10, 1957, ran off a municipal street maintained by the defendant parish. This suit was filed by him individually to recover for vehicle damage and medical expenses, and also on behalf *64 of his daughter to recover for her personal injuries. He bases his cause of action upon allegations of a negligent failure of the defendant to place barriers or warning devices to protect the traveling public against a street hazard created by it and existing at the time and place of the accident, which negligence is alleged to have caused the accident and the resulting injuries.
Plaintiff appeals from the dismissal after trial of his suit.
The two principal issues of this appeal concern (a) whether any negligence on the part of the defendant parish was the sole proximate cause of the accident which resulted in the damages for which recovery is sought herein; and (b), if so, whether the defendant parish can be held liable for any negligence in the performance of this governmental function.
The District Court found it unnecessary to pass upon the defendant's alleged immunity from liability, since it dismissed plaintiff's suit on the grounds (we are informed, oral reasons only being rendered) that the situation was not sufficiently hazardous to necessitate warning signs, and that the lack of warning signs did not cause or contribute to the accident since the plaintiff's driver had already negotiated the turn when she lost control of her car (which lack of control was felt to be a proximate cause of said accident.)
The accident occurred on West Roosevelt Street. For convenience in discussion, the site of the accident is diagrammed below:

West Roosevelt Street is a small crosstown street running east and west within the city limits of Baton Rouge. The whole street was formerly blacktopped and measured 18 feet in width. It was bordered on its south by a fairly deep drainage ditch.
In the spring of 1957 several blocks of the western portion of the street were newly paved and the width thereof enlarged to 22 feet. The "new section" (see diagram above) stopped abruptly in the middle of a block, forming a 4-foot set-off or jag where it joined the "old section." The drainage ditch bordering the old section was immediately in front of (facing east) the extra four-feet width of the new pavement
Along the edge of the old road eastward of the jag there were rain-pit holes in the black top, about six inches in diameter and from 2-5 inches apart, deep enough (according to the investigating police officer) to "jerk a wheel if the wheel gets off into one."
At the time of the accident there were no warning signs or barriers to alert motorists *65 to the offset and the ditch immediately in front of it, and there were no street lights near the site.
The facts of the accident itself are undisputed.
At about 7:30 p. m. on the night of the accident the 16-year-old daughter of the defendant, Jacqueline Carlisle, was driving eastward from Nicholson Drive to Highland Road by way of West Roosevelt Street.
Proceeding eastward on the new pavement at about 25 mph, she suddenly came upon the set-off or jag where the new pavement met the old narrow street with the ditch immediately in front of her. She testified she was "approximately a car length, the length and a half of a car" when she saw the danger. She made a precipitous left turn, immediately placing her foot on the brake "for assurance". As she made this swift turn into the narrower old portion of the road, she felt her wheels hit some bump or hole which swerved her car into the ditch on her right about a car's length beyond the jag or offset.
Her testimony was substantiated to a great extent by the investigating police officer, who found her car in the ditch on the right about a car's length beyond (east-ward of) the offset and was of the opinion that "these rain-beat holes or edges on the blacktop of the old section * * * had jerked the wheel and sent the car into the ditch."
1. Negligence and Contributory Negligence.
We respectfully differ with our learned and conscientious trial brother in his holding that the situation created by the defendant parish at the junction of the new and old streets was not sufficiently hazardous to warrant the erection of a barrier or warning sign.
A municipal government must keep its streets and sidewalks reasonably safe, but "to render it liable in damages the defect complained of must be dangerous or calculated to cause injury"; those defects "that are not in the nature of traps, or from which danger cannot reasonably be anticipated, provide no actionable negligence," White v. City of Alexandria, 216 La. 308, 43 So.2d 618, 620.
As we stated recently in Lejeune v. State Farm Mut. Auto. Ins. Co., La.App., 107 So.2d 509, summarizing the duty of municipal governments, 107 So.2d 523:
"* * * there is no absolute liability upon municipalities for injuries occurring on its streets. The municipality is not an insurer. In order for any duty to post warning signs or barriers to exist, there must be an unusual and inherently dangerous situation in such proximity to the highway as to make travel upon it unsafe for travelers using the streets for the purpose for which they were constructed and exercising due regard for their own safety."
In the Lejeune case, the Parish of East Baton Rouge was impleaded as a party defendant on the ground that the accident was caused partly by its negligence in failing to maintain warning signs in connection with a narrowing of a streetway. This court absolved the parish of negligence under the circumstances of that case. The older portion of the street in that case was two feet narrower than the new portion, but "to prevent a sharp offset" the new part was "gradually tapered * * * into the old." 107 So.2d 513.
The situation therein is greatly to be distinguished from the present. The abrupt offset herein constituted in effect a sudden ending of a substantial portion of the traffic lane and was of such a nature as to require barricade or warning device, since motorists are not required to anticipate that the roadway in which they are traveling will suddenly without warning run into an unmarked deep ditch. Smith v. State, through Department of Highways, La.App. 1 Cir., 87 So.2d 380; Dowden v. State, La.App. 2 Cir., 81 So.2d 48; Reeves *66 v. State, La.App. 2 Cir., 80 So.2d 206; cf., McCraine v. T. L. James and Company, La. App. 1 Cir., 95 So.2d 156.
That the abrupt ending of a portion of the traffic lane into a ditch was a hazard requiring warning device is to some extent evidenced herein by the prompt action of the investigating police officer in reporting the condition of the street as hazardous, as a result of which warning signals were placed to indicate to oncoming eastbound traffic the presence of the sudden jag in the street. It is further to be noted that to avoid such a hazardous situation the engineers in the Lejeune case had recommended and used a gradual taper.
The argument is made, however, that the lack of such warning devices did not constitute a proximate cause of the present accident because Miss Carlisle noticed the offset about a car length and a half in advance thereof and had successfully negotiated the turn and would have continued without incident if the wheels of her car had not caught in the jagged edges of the blacktopped highway immediately east of the offset. Of course, at her speed of 25 mph (36.5 feet per second), Miss Carlisle had swerved and was in the ditch within a second of the time that she noted the unmarked hazard.
The abrupt ending of her traffic lane into the ditch was not readily discernible in the dark or by the light of her headlights. The lack of adequate warning sign to alert her to the sudden jag in the highway caused her sudden swerve just before her traffic lane ended, because of which her tires caught the immediately adjacent ragged and holeeroded edge of the old blacktop so as to cause her to lose control of her car. Had she been alerted earlier to veer leftward by the required signals, she would not have passed across and been caught by the extreme southern hazardously-holed edge of the old streetway but would have negotiated her turn on the safer more centered portion of the blacktop. As a matter of fact, the dangerous nature of the adjacent-road surface is a further strong reason why signs or barricades were needed to alert oncoming eastbound motorists of the danger created by the abrupt ending of the roadway.
Defendant's suggestion that Miss Carlisle was contributorily negligent in having failed to observe sooner the abrupt ending of the road is, we feel, without merit. In Smith v. State, through Department of Highways, 87 So.2d 380, at page 383, we stated that "motorist has no legal duty to anticipate an unusual hazard where there is no adequate warning, but has the right to presume the highway is safe for usual and ordinary traffic, even at night." Thus, although the driver of a vehicle at nighttime is required to maintain such control and lookout as to stop or avoid "the ordinary hazards which may be expected on a road" when revealed by his headlights, contrariwise "when the hazard is unusual in nature and not readily discernible, the drivers running into same have not been held guilty of contributory negligence." 87 So.2d 384.
Likewise, we are not impressed with the defendant's contention that because she had driven on West Roosevelt once before, although in the opposite (westbound) direction, a stronger duty of lookout arose, her violation of which constituted a proximate contributory cause of this accident barring recovery. Coming westward, as she had on the previous occasion, there is no sudden jag or abrupt ending of the traffic lane. (See diagram.) Although from her previous traverse of the roadway she realized the old portion was narrower than the new one, she was under no duty to anticipate, in returning several days later at nighttime from the opposite direction, that there would be a sharp rather than a tapering offset, or that such abrupt offset would be left without warning device to alert east-bound motorists as to the location of the dangerous jag in the roadway.
It is our conclusion, therefore, that the plaintiff is entitled to recover damages sustained as a result of the accident, unless *67 the defendant parish is immune from liability for negligence in the performance of this governmental function.
Immunity from Tort Liability in the Performance of this Governmental Function.
Re-urged in this court is defendant's exception of no cause of action founded upon the contention that the placing of warning devices concerning a dangerous street condition is a governmental function for the negligent performance of which the defendant parish is immune from liability.
Numerous cases have held that municipalities and other governmental bodies are not liable for the torts of their agents or employees while engaged in the performance of purely governmental functions. See, e. g., Barber Laboratories v. City of New Orleans, 227 La. 104, 78 So. 2d 525, and cases therein cited; Terrill v. ICT Ins. Co., La.App. 1 Cir., 93 So.2d 292.
But, as a well recognized exception to such immunity from tort liability in the performance of governmental functions, the governing bodies of municipalities are held liable in damages to those injured because of a failure to keep streets and sidewalks therein in a reasonably safe condition to travel, including those injured because of the negligent failure to protect or warn travelers of the danger resulting from unusually hazardous and trap-like conditions of the travelways created by or made known to the municipal governing bodies. White v. City of Alexandria, 216 La. 308, 43 So. 2d 618, and many cases cited therein; Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58; Lejeune v. State Farm Mut. Auto. Ins. Co., La.App. 1 Cir., 107 So.2d 509; Brantley v. City of Baton Rouge, La.App. 1 Cir., 98 So.2d 824; Ward Baking Company v. City of New Orleans, La. App. Orleans, 94 So.2d 720; Clinton v. City of West Monroe, La.App. 2 Cir., 187 So. 561, 562. See, also, Corkern v. Travelers Ins. Co., 229 La. 592, 86 So.2d 205; Fordham and Pegues, "Local Government Responsibility In Tort in Louisiana", 3 La. L.Rev. 720 (1941), 731 et seq.
Although various rationalizations have been advanced, both the rule of governmental immunity and the exception as to negligence in the maintenance of municipal streets are based upon historical rather than logical reasons. Fordham and Pegues, "Local Government Responsibility in Tort in Louisiana", supra cit.; Harper & James, The Law of Torts (1st Ed., 1956), Sections 29.2 (p. 1608), 29.3 (p. 1610), 29.6 (p. 1619), 29.7 (p. 1627.) See also Pugh, "Historical Approach to the Doctrine of Sovereign Immunity", 13 La.L.Rev. 476 (1953).
Thus, when able counsel for appellee argues that a negligent failure to place signs to warn of a street hazard is the same sort of a governmental function as the negligent failure to maintain traffic signals in working order, which concededly has been treated as within the rule granting immunity from tort liability (Terrill v. ICT Ins. Co., La.App. 1 Cir., 93 So.2d 292), the answer to this contention is not necessarily that there is a logical distinction between the two types of governmental activities. Most simply, the answer is that the failure of a municipality to place barriers or signs to warn or protect the traveling public of the hazard created by an excavation or an abrupt street ending has historically been regarded as falling within the exception under which there is municipal liability for such negligence, rather than as a governmental activity immune from tort liability. Allen v. Town of Minden, 127 La. 403, 53 So. 666; Clinton v. City of West Monroe, La.App. 2 Cir., 187 So. 561; Weil v. Alexandria, 2 Cir., 7 La.App. 387; see 19 McQuillan, Municipal Corporations, Section 54.90 (p. 338 et seq.), quoted at length in Lejeune v. State Farm Mut. Auto. Ins. Co., supra, at 107 So.2d 521-522, from the brief therein of able counsel for the defendant parish.
It is finally argued on behalf of the defendant parish that although, it may be, municipal governments are subject to liability for street defects and failing to warn the public thereof, parishes unlike *68 municipalities retain governmental immunity for damages arising by reason of street defects. Smith v. Police Jury, 192 La. 214, 187 So. 553; cf., Barbee v. Road District, 2 Cir., 14 La.App. 652, 130 So. 660.
Although the street defect in question herein is situated within the limits of the City of Baton Rouge, the Parish of East Baton Rouge was made defendant because under the city-parish plan of government the parish council is given exclusive authority and responsibility for road and sidewalk maintenance throughout the territorial limits of the parish, including within the City of Baton Rouge. Brantley v. City of Baton Rouge, La.App. 1 Cir., 98 So.2d 824.
It should be stated, in explanation, that the metropolitan area of East Baton Rouge Parish (within which the City is located) has a combined city-parish government, as specially authorized by Article 14, Section 3(a), La. Constitution, LSA-Const. (Act 389 of 1946, ratified by the People). Exclusive authority for road and sidewalk maintenance within the limits of the parish was vested in the parish council pursuant to the constitutional authority especially granted to consolidate and redistribute the powers and functions of the units of local government, and such provision was discussed and held constitutional in State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, 484-486.
Although for administrative efficiency the city and parish street departments were consolidated and the responsibility for the maintenance of the city streets was vested in the parish council, we do not believe that this circumstance furnishes a sound reason for holding that the historic liability of the governing authorities responsible for maintaining municipal streets in safe condition no longer obtains in the City of Baton Rouge and that this activity is now shielded by governmental immunity. It is apparent that the same reasons rendering non-immune the negligent maintenance of municipal streets (see, e. g., Clinton v. City of West Monroe, La.App. 2 Cir., 187 So. 561 at page 564) apply equally whether the maintenance of the city streets is done by a combined city-parish street department or by the city itself. And, in fact, the parish council was held liable for street defects in Brantley v. City of Baton Rouge, La.App. 1 Cir., 98 So.2d 824, certiorari denied.
We are further not unmindful that the doctrine of governmental immunity from tort liability has been severely criticized as an anachronism initially based upon the royal prerogative and the personal immunity of the sovereign,[1] and with little practical basis in this age when liability insurance is universally available. We are not wholly unsympathetic to suggestions that the doctrine should therefore be construed most conservatively, and limited rather than extended.
The combined city-parish government for the metropolitan area of Baton Rouge is a most modern attempt to achieve responsible and efficient government for an urbanized area. We feel it would be inappropriate to shackle to this new twentieth century form of government the medieval concept of governmental irresponsibility for damages arising from negligently maintained municipal streets, otherwise not applicable save (allegedly) *69 for the change of governmental plan.
Damages.
As to quantum, the special damages for medical expenses and car damages sustained by the plaintiff father are stipulated as totaling $562.80.
Miss Carlisle sustained a fractured nose, shock, and a mild concussion as a result of the accident. Surgery was performed to straighten the nose involving hospitalization for approximately 3½ days and wearing a nose cast for about two weeks. She seeks recovery also for a residual nose deformity resulting from the accident.
She describes the residual as "a bump on the left hand side of my nose * * * and right from the bump it [the nose] curves over to the left" and is "crooked." She stated that because of this condition she is "very self conscious". Her mother felt the bump and crookedness to be "pronounced". The District Court described the bump as a "raise in the middle of the nose" and as for the crookedness stated that it might be "a very slight deflection. * * * awfully slight."
Although the external disfiguration may be relatively slight, considering the shadow cast in the life of this teen-aged girl by some self-consciousness resulting from this tortcaused blemish, as well as the suffering occasioned at the time of the accident and by the minor surgery, we think an award of $2,000 would be fair and adequate under the circumstances. Cf., Burley v. Chase, La. App. 2 Cir., 76 So.2d 593; Blanchard v. New Orleans Public Service, La.App. Orleans, 25 So.2d 741; Hardy v. National Mut. Cas. Co., La.App. 2 Cir., 9 So.2d 346.
Decree.
For the foregoing reasons, the judgment of the district court dismissing plaintiff's suit is reversed. It is ordered, adjudged, and decreed that there be judgement herein against the defendant and in favor of the plaintiff, James V. Carlisle, individually in the sum of Five Hundred Sixty-Two and 80/100 ($562.80) Dollars, and for the use and benefit of his minor daughter, Jacqueline Carlisle, in the sum of Two Thousand and no/100 ($2,000.00) Dollars; together with legal interest thereon from date of judicial demand until paid.
Reversed and rendered.
NOTES
[1] See Fordham and Pegues, "Local Government Responsibility In Tort in Louisiana", 3 La.Law Rev. 720 (1941) at 720: "The American perversion of the old English maxim that the king can do no wrong is a conception of public irresponsibility against which one's moral sense rebels. That government is above the law is a notion that is hardly consistent with the doctrine of supremacy of law which has so long been taken as a basic tenet in our democratic faith." See also the late Justice Moise's eloquent dissent in Cobb v. Louisiana Board of Institutions, 229 La. 1, 85 So.2d 10, and Judge Janvier's thoughtful and perceptive criticism of this medieval doctrine in Orgeron v. Louisiana Power & Light Co., Orleans, 19 La.App. 628, 140 So. 282. See also Pugh, "Historical Approach to the Doctrine of Sovereign Immunity", 13 La.L. Rev. 476 (1953).