119 So.2d 621 (1960)
Amy D. TOPPI
v.
Sidney V. ARBOUR et al.
No. 4972.
Court of Appeal of Louisiana, First Circuit.
March 21, 1960.
Rehearing Denied April 25, 1960.
*622 D'Amico & Curet, Walton J. Barnes, Baton Rouge, for appellant.
*623 R. Gordon Kean, Jr., City Par. Atty., John V. Parker, Asst. City Par. Atty., Kantrow, Spaht, West & Kleinpeter, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, TATE, FRUGÉ and LANDRY, JJ.
LANDRY, Judge.
Plaintiff Amy D. Toppi prosecutes this appeal from the judgment of the lower court rejecting her demand in tort against defendants Sidney V. Arbour, the City of Baton Rouge and the Parish of East Baton Rouge, for damages for personal injuries received when plaintiff fell on a sidewalk in the City of Baton Rouge, Louisiana.
The accident giving rise to this litigation occurred at approximately 4:30 P.M., in front of Municipal Number 319 Maximilian Street (owned by defendant Arbour) on June 5, 1957.
Liability of defendant Arbour is predicated upon his ownership of the premises adjoining the sidewalk on which plaintiff fell, it being plaintiff's contention the abutting property owner is under a duty to maintain the sidewalk in safe condition. Defendants City of Baton Rouge and Parish of East Baton Rouge are sought to be held on the theory they are jointly responsible for maintenance of sidewalks within the city under the City-Parish Plan of Government in force since January 1, 1949.
In the lower court exceptions of no cause and no right of action were filed on behalf of all defendants. The lower court sustained the exception filed on behalf of defendant City of Baton Rouge predicated upon our ruling in Brantley v. City of Baton Rouge, 98 So.2d 824. The remaining exceptions were referred to the merits. After trial on the merits, judgment was rendered in favor of defendants Arbour and Parish of East Baton Rouge upon a finding by the trial court that plaintiff was contributorily negligent. This appeal is founded primarily upon the contention the trial judge erred in finding plaintiff guilty of contributory negligence.
Basically the defense of defendants Arbour and City of Baton Rouge is predicated on our ruling in the Brantley case, supra, wherein we held that responsibility for maintenance of sidewalks in the City of Baton Rouge has been imposed upon the Parish of East Baton Rouge by the provisions of the present charter of the City-Parish Plan of Government effective January 1, 1949, and the City of Baton Rouge and adjoining property owners relieved of such obligation or duty.
Defendant Parish argues that the lower court was in error in not dismissing plaintiff's demand on its exception of no cause and no right of action because responsibility for maintenance of sidewalks within the City of Baton Rouge has been specifically conferred or imposed upon adjoining property owners pursuant to the provisions of Section 39 of Act 169 of 1898 (the former Charter of the City of Baton Rouge) as amended by Act 31 of 1904.
The defense thus tendered by defendant Parish is founded on purely technical grounds and in order that it may be more fully understood we deem it advisable to set forth the ramifications thereof in detail.
In substance, counsel for defendant Parish argue that in order to determine the legal relationship between plaintiff Toppi and the Parish, the court must first ascertain the powers, duties and responsibilities of the city as they existed with respect to the duty of sidewalk maintenance prior to January 1, 1949, the effective date of the present City-Parish Charter in force and governing the affairs of the City-Parish Governments for the City of Baton Rouge and the Parish of East Baton Rouge, respectively.
Counsel argues that a careful reading of Sections 3.01 and 3.02 discloses the present *624 charter makes no changes in the powers, functions and responsibilities of the city with respect to sidewalks but merely transfers said duties and obligations, as they existed prior to January 1, 1949, to the Parish. In this connection, counsel points to the following provision of Section 3.01 of the Charter in question.
"The Parish Council of East Baton Rouge Parish shall, in addition to the powers and duties conferred or imposed by other provisions of this plan of government, have:
"(b) exclusive authority, saving the authority of the State of Louisiana, throughout the Parish, including the City of Baton Rouge, with regard to the * * * grading, improving, constructing, and reconstructing of sidewalks, including the authority to assess the whole or part of the cost of any * * * sidewalk improvement on the owners of the abutting property. To that end, there are hereby transferred to the Parish and to the Parish Council as the governing body thereof, except as specifically provided in this plan of government, all the powers and duties hitherto conferred or imposed on the City of Baton Rouge by its charter or by the general laws of the State relating to the above enumerated matters * * *." (Emphasis supplied.)
Further, in this same regard, counsel directs our attention to the provisions of Section 3.02 of the Charter in which it is provided that "all provisions of the Charter of the City of Baton Rouge not in conflict with the provisions of this plan of government are expressly continued in force and effect * * *".
It is the contention of counsel for the parish that to establish the status of the City of Baton Rouge in relation to sidewalks prior to January 1, 1949, consideration must be afforded Act 169 of 1898 (The city charter in effect prior to the present City-Parish form of Charter) and more particularly to Section 39 thereof which, as amended by Act 31 of 1904, reads as follows:
"Sec. 39. All paved and unpaved streets in the city of Baton Rouge shall be kept in repair by said City, and all paved and unpaved banquettes in said City shall be kept in repair by the owners of real property fronting thereon. That when a railroad bed or track occupies a portion of a street, it shall keep its roadbed in repair."
From the foregoing, the argument of counsel for defendant parish, stated simply, is to the effect that since the present charter transferred to the parish only those responsibilities previously incumbent upon the city, it imposes no obligation upon the parish respecting maintenance of sidewalks because under the plain provisions of Act 31 of 1904, said responsibility, on January 1, 1949, rested upon the property owners within the city and not the city itself. Finally counsel for defendant parish argues that since there was no obligation on either the city or Parish to maintain the sidewalk in question, no duty of care was owed plaintiff in respect thereto by either the city or Parish.
Learned counsel for the Parish strenuously urges that we reconsider our opinion in the Brantley case, supra, wherein we held responsibility for sidewalk maintenance in the City of Baton Rouge rested in the Parish of East Baton Rouge under the present charter because of our failure in that case to consider the effect of Act 31 of 1904 in rendering our decision. Counsel earnestly requests that we put the matter at rest and squarely decide the effect which Act 31 of 1904 may have on the issue presented.
Esteemed counsel for the city strongly argues we should disregard the Brantley case in disposing of the case at bar because we therein failed to construe the effect of Act 31 of 1904, in relieving the *625 property owner of primary liability for sidewalk maintenance in the City of Baton Rouge. In effect counsel argues that our failure in the Brantley case to recognize the provisions of Act 31 of 1904, renders the Brantley decision erroneous and urges our reversal thereof.
It is elementary that the liability of defendants herein must be ascertained in the light of the existing jurisprudence on the subject matter of responsibility of abutting owners and governmental agencies for injuries to pedestrians resulting from defective or unsafe sidewalks. It is also fundamental that such jurisprudence must be considered in conjunction with all legislation, general or special, relative to or bearing upon any of the defendants in the case at bar.
The weight of authority recognizes the well established principle of law that generally an abutting property owner is under no duty to repair or maintain public sidewalks and is, therefore, not liable in damages to persons injured by defects therein. There are, however, certain well recognized exceptions to the foregoing general rule. The majority of jurisdictions recognize and impose liability upon an adjoining property owner in those instances in which the owner makes some special use of the sidewalks as well as in those cases wherein the property owner constructs a sidewalk in a defective manner or creates the defect which causes the injury.
We note this pronouncement appearing in 63 C.J.S. Municipal Corporations § 861b, p. 219:
"The owner or occupant of property abutting a sidewalk is not an insurer of the safety of pedestrians using the sidewalk and, as a general rule, in the absence of statute, he owes no duty to the public to keep the sidewalk in repair or in a safe condition for travel, and is not liable for injuries to a traveler from defects or obstructions which he did not create.
"The owner or occupant of property abutting a sidewalk is not an insurer of the safety of pedestrians using the sidewalk and, although there is some authority holding otherwise, as a general rule, in the absence of statute, he owes no duty to the public to keep the sidewalk in repair or in a safe condition for public travel, or to see that the municipality does so. This rule has been applied even though he originally constructed the sidewalk, but there is also authority to the contrary. It follows that, in the absence of a statute or ordinance expressly imposing liability, an abutting owner or occupant is generally not liable for injuries to a traveler through failure to maintain a sidewalk in repair, if he did not cause the necessity therefor, or from defects or obstructions therein which he did not create."
As stated in our opinion in the Brantley case, supra, citing with approval Johnson v. Sewerage and Water Board, La.App., 57 So.2d 923 and Arata v. Orleans Capitol Stores, 219 La. 1045, 55 So.2d 239, the jurisprudence of this state follows the above stated general rule.
Plaintiff Toppi and defendants City of Baton Rouge and Parish of East Baton Rouge concede there is no duty on the part of defendant Arbour to maintain the sidewalk in front of his premises in the absence of a statute imposing upon him responsibility in this respect but argue that in the instant case such duty was imposed upon Arbour both under the provisions of Act 31 of 1904 and Sections 171, 172 and 173, Title 2 of the Baton Rouge City Code set forth in full in our opinion in the Brantley case.
At this junction we point out that in the Brantley case, supra, we held that under the express provisions of Sections 3.01 and 3.02, Chapter 3 of the City-Parish Plan of Government for the City of Baton Rouge and Parish of East Baton Rouge, all authority with respect to sidewalks, including *626 maintenance and repair, were transferred to and made the exclusive right and obligation of the Parish, thereby relieving the city of responsibility therefor. Predicated upon this ruling, we held the city was not responsible to plaintiff in the Brantley case since no duty existed on the part of the city to repair the defective sidewalk which was the cause of plaintiff's injury.
Moreover, in the Brantley case, we recognized and reaffirmed the well established jurisprudence of this state in holding that in the absence of a legal duty imposed by a statute or ordinance a property owner is not primarily responsible for injuries caused by defective sidewalks but that although not primarily liable, if negligent, a property owner will be held accountable to the primary obligor whether it be parish or municipality. In our per curiam on application for rehearing in the Brantley case we held that the ordinance therein relied upon by the city and parish as authority for imposition of liability upon the property owner, neither enlarged nor diminished the owner's responsibility to third persons. We further held therein that, conceding the ordinance to be constitutional, the duty of repair therein imposed upon the property owner arose only after notice as provided for in Section 173 of the ordinance itself.
We see no sound reason to reverse our ruling in the Brantley case on the basis of the argument presented in the case at bar. It is the settled jurisprudence of this state that municipalities are responsible in damages for accidents resulting from failure to repair or maintain defective sidewalks. Parker v. City of New Orleans, La.App., 1 So.2d 123; 63 C.J.S. Municipal Corporations § 794(2), p. 107. Our jurisprudence is also established to the effect a municipality may not relieve itself of this obligation by shifting the burden to abutting property owners. Betz v. Limingi, 46 La.Ann. 1113, 15 So. 385.
We are not unaware of the legislative authority to exempt a municipality from liability otherwise imposed for damages occasioned by the unsafe condition of a public sidewalk, but in view of our repeated pronouncements and reiteration of the doctrine of liability in this regard, any asserted legislative immunity and exemption must be so clearly and explicitly expressed and stated as to eliminate all doubt regarding the legislative intent with respect thereto.
Considering the nature of the subject matter involved, any statute purporting to relieve the municipality of such obligation must be subjected to the rule of strict construction and no such effect will be judicially accorded any statute unless its meaning in that regard is clear and unmistakable.
Although Act 39 of 1904 relied upon by counsel for plaintiff as well as by counsel for defendant City and Parish does state that banquettes (sidewalks) in the City of Baton Rouge shall be kept in repair by the property owner fronting thereon, it does not expressly relieve the city of its primary obligation to maintain public sidewalks. Neither does the statute state that the obligation therein imposed upon the property owner shall be exclusive of the obligation otherwise imposed upon the municipality. We believe Act 31 of 1904 is merely legislative recognition of the principle that a municipality may hold an adjoining property owner financially responsible for the costs of repairing and maintaining sidewalks and constitutes nothing more than express authority for the City of Baton Rouge to apply said principle within the municipality. Had the Legislature intended Act 31 of 1904 to relieve the municipality of its admitted primary obligation to maintain sidewalks, it would have undoubtedly so stated in precise terms.
We conclude, therefore, that Act 31 of 1904 did not relieve the city of its inherent duty to maintain sidewalks. Therefore, *627 reiterating our rule in the Brantley case, we find the obligation exclusively that of the Parish. It follows, therefore, that the action of the learned trial judge in sustaining the exception of no cause of action filed on behalf of defendant City of Baton Rouge and overruling a similar exception on behalf of defendant Parish of East Baton Rouge was proper.
Subsequent to oral argument before this court, exceptions of no right and no cause of action were filed herein on behalf of defendant Parish of East Baton Rouge predicated upon its alleged immunity from liability for the torts of its agents and employees engaged in governmental functions pursuant to the authority contained in Duree v. Maryland Cas. Co., 238 La. 166, 114 So.2d 594 and Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793.
The question raised by these exceptions has heretofore been decided adversely to the contention of defendant Parish of East Baton Rouge in the opinion of this court rendered in Carlisle v. Parish of East Baton Rouge, La.App., 114 So.2d 62. In the Carlisle case, this court expressly held transfer of responsibility for maintenance of sidewalks in the City of Baton Rouge to defendant Parish did not change or alter the well established rule of non-immunity from liability for failure to maintain municipal sidewalks. The Carlisle case is further authority for the view that the entire principle of governmental immunity from suit should be restricted rather than enlarged and the universally recognized rule of absence of sovereign immunity from suits arising from failure to properly maintain municipal sidewalks should not be changed even though responsibility for such maintenance no longer rests in the municipality.
The writer of the present opinion did not participate in the Carlisle case and entertains serious doubt as to the correctness of that portion of said decree holding the plea of governmental immunity unavailable to defendant parish. However, the pronouncements contained therein regarding liability of defendant parish for failure to maintain municipal sidewalks in safe condition still represents the views of the majority of this court.
It follows, therefore, the exceptions of no right and no cause of action filed in this court on behalf of defendant Parish of East Baton Rouge, are overruled.
Considering our ruling that Act 31 of 1904 did not impose upon defendant Arbour primary responsibility for repairing and maintaining the sidewalk in front of his premises but only financial liability for the costs of maintenance and repair made by the city or Parish, the only other possible basis for assessing liability to defendant Arbour in the premises would be pursuant to the provisions of Title 2, Sections 171, 172 and 173 of the Baton Rouge City Code. Conceding the constitutionality of this Section of the Code (an issue which we need not determine to decide the question at hand), we note that Section 173 specifically provides that the duty of repair therein imposed upon the property owner does not arise until and unless notice is served upon the property owner either in writing or by publication in the official journal. Since it is admitted no such notice was published or served upon defendant Arbour herein, the ordinance in question, as applied to the facts of the case at bar, did not create a legal duty on the part of defendant Arbour to repair or maintain the sidewalk in question.
Liability of defendant Parish of East Baton Rouge is dependent upon notice of the existence of the defect which caused plaintiff's injury. It is the settled jurisprudence of this state that such notice may be either actual or constructive. See Parker v. City of New Orleans, La.App., 1 So.2d 123, wherein it was held that the presence of a defect for a period of two months preceding a plaintiff's injury was sufficient to charge a defendant municipality *628 with constructive notice of its existence and constitute liability therefor.
Without indulging in a detailed analysis of the issue of notice in the case at bar, we deem it sufficient to say the record establishes beyond any doubt the sidewalk in question had been in an obviously defective condition for a number of years preceding plaintiff's accident. Under such circumstances, we have no hesitancy in concluding defendant had constructive notice of the defective condition of the sidewalk at the point where plaintiff fell.
The evidence shows that in the 300 block of Maximilian Street (which runs north and south) the sidewalks on both the east and west side of the street are in a generally deplorable condition. On the afternoon of the accident plaintiff (approximately 56 years of age) was returning to her home situated on the west side of Maximilian Street after having run an errand to a nearby store. Plaintiff was admittedly aware of the generally bad condition of the sidewalks and although she lived on the west side of the street she was proceeding southerly along the east side of Maximilian Street because (according to her testimony) the sidewalk on the east side was in better condition than that on the west side.
It is undisputed that rain had fallen on the morning of the accident and there is some evidence to the effect intermittent showers occurred during the day. When plaintiff reached a point in front of Municipal Number 319 Maximilian Street (owned by defendant Arbour) and approximately five feet north of the southerly boundary of Arbour's property, she lost her footing and fell as a result of which fall she sustained a rather severe fracture of her left wrist at the joint.
The testimony of record indicates the sidewalk in front of the Arbour property consisted of brick laid in a herringbone pattern and originally held together with mortar. Photographs introduced in evidence clearly show that in the approximate center of the Arbour lot, a tree growing between the sidewalk and curb has uprooted the sidewalk, breaking the bricks and resulting in the formation of a "sink" or "hole" across the entire sidewalk into which the surface bricks have become depressed. It also appears the remaining portion of the sidewalk fronting Arbour's property has become depressed to the extent that during rains water drains from defendant's property and flows across the sidewalk into the street. Beyond and to the south of the tree the condition of the sidewalk in front of defendant's property is somewhat improved. A few feet from Arbour's southerly line the bricks are reasonably smooth and level but the evidence as a whole indicates that although this section of the sidewalk is reasonably smooth its condition leaves much to be desired from the standpoint of its being a safe passageway. The evidence shows that the mortar between some of the bricks has deteriorated and disappeared and the crevices thus created have been filled wih dirt. Although rain had fallen earlier in the day, it was not raining at the time of the accident but is conceded the ground was wet and soft. It is undisputed that plaintiff's fall occurred as she was walking on the relatively smooth portion of the sidewalk near the southern extremity of defendant's premises.
Plaintiff testified that after having safely passed the large hole near the tree and upon reaching a point approximately five feet from defendant's south property line, she stepped on a brick which seemed to "come up" and she fell. In substance, plaintiff stated her foot did not slip but that as she stepped on the brick in question it seemed to "tilt" or "tip" causing her to lose her balance and fall. Plaintiff, and other witnesses residing in the neighborhood, testified that water passing over the sidewalk and collecting in the hole near the tree causes a green slime or scum to collect on the bricks making them slippery. In this regard, the evidence is *629 to the effect that in and near the hole the slime is visible but at the point where plaintiff fell it is almost imperceptible. Plaintiff also testified that within a few days of her accident she revisited the scene and noticed that at the point where she fell there was no mortar between some of the bricks and she particularly noted some of these bricks were loose and the edges thereof elevated. She further testified that on the occasion of her returning to the scene she detected the presence of the scum or slime on the sidewalk at the spot where she fell.
We do not consider it necessary to detail the testimony of every witness who testified concerning the condition of the sidewalk except to say it corroborates plaintiff's version as to the condition of the sidewalk in the general vicinity as well as at the point of her fall.
The trial court held plaintiff guilty of contributory negligence basing his conclusion on the fact that, since plaintiff fell on the better portion of the sidewalk, she evidently was not exercising due care.
Counsel for plaintiff argues that our brother below erred in concluding plaintiff was contributorily negligent under the circumstances shown. Upon a careful study of the entire record we believe the position of counsel for plaintiff well taken. In this connection, we point out that had plaintiff fallen into the large hole near the tree (an obvious danger) the trial court would no doubt have been correct in finding her guilty of contributory negligence. Such was not the case, however. The circumstances of this case convinces us that plaintiff was exercising due care and taking reasonable precaution for her own safety at the time of the accident. Having resided in the same block for over three years preceding the date of the accident, she was aware of the condition of the sidewalk in the general area. Her testimony shows that by paying attention to the sidewalk as she proceeded, she successfully maneuvered around the large hole near the tree. Had she not been attentive and alert the accident would most probably have occurred sooner. Having safely negotiated the obviously dangerous portion of the sidewalk in front of Arbour's premises, she was no doubt lulled into a sense of false security by the relatively safe appearance of that portion of the sidewalk on which she fell. She no doubt relaxed her vigilance because at the point where the accident occurred the brick surface seemed level but was actually unsafe because some of the bricks were imbedded in soft or loose dirt and would have a tendency to shift position when stepped upon.
We are convinced the evidence shows plaintiff fell either because she stepped on a loose brick which tilted or turned under her weight or lost her footing due to the slick or slippery condition of the bricks resulting from the fungus or slime thereon.
While we are reluctant to reverse the finding of a trial court on a question of fact, it is our duty to do so when we find manifest error as we do in the case at bar.
The following language appearing in White v. City of Alexandria, 216 La. 308, 43 So.2d 618, 620:
"For determining what is a dangerous defect in a sidewalk (that which renders the municipality responsible in damages to a pedestrian injured as a consequence thereof) there is no fixed rule; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question of whether or not the walk was maintained in a reasonable safe contion for persons exercising ordinary care and prudence. (Italics supplied.) * * *

"Such ways of passage are intended for public use, of course, and a pedestrian is entitled to assume that they are not dangerous. Further, he is not required to constantly observe the surface *630 of the walk or to exercise the care that would be necessary in traversing a jungle. However, he cannot be completely oblivious of its condition; he must exercise ordinary care when using it, having in mind the well recognized fact that throughout every city of any size in this state there exist irregularities in the walkways brought about by natural causes such as rains, expansions, soil erosion and tree roots." (Italics supplied.)
Contrary to defendants' contention we conclude plaintiff has established her case against the Parish of East Baton Rouge by a preponderance of evidence as required by law and is entitled to judgment herein against said defendant. Hebert v. City of New Orleans, La.App., 163 So. 425; Brantley v. City of Baton Rouge, La.App., 98 So.2d 824.
There remains for our consideration only the question of quantum to be awarded plaintiff. The record shows that plaintiff, a white female 56 years of age, sustained a multiple fracture of the left wrist more particularly described as a comminuted fracture of the distal end of the left radius and a fracture of the tip of the ulnar styloid process. The fracture, although well healed, did not knit in perfect alignment resulting in a slight shortening of the distal end of the radius process and a radial deviation producing a minor deformity or "crook" in her left hand. As a result of her injury, plaintiff has suffered a ten per cent disability of her left wrist which condition will be permanent. Immediately after her accident, plaintiff consulted a doctor who hospitalized her for two days during which time her wrist was immobilized by application of a cast which extended from the knuckles to a point midway between her left elbow and shoulder. At the end of four weeks the initial cast was removed, her arm realigned and a new cast applied, a procedure rendered most painful by virtue of the fact it could not be performed under anesthesia. The second cast was removed after four weeks and thereafter plaintiff's arm remained in a sling for an additional period of three weeks. It appears that the injured wrist is not particularly painful at present but plaintiff testified its strength has diminished and she does not have full use thereof as she did prior to the accident. Considering the nature of plaintiff's injury, the deformity to her left hand and the permanent disability of her left wrist resulting therefrom, we believe an award of $4,000 will adequately compensate her therefor and do substantial justice between the parties. Plaintiff proved hospital and medical expense in the amount of $131 which she is also entitled to recover herein.
For the reasons hereinabove set forth, it is, therefore, ordered, adjudged and decreed that the judgment of the lower court sustaining the exception of no right and no cause of action filed on behalf of defendant City of Baton Rouge and dismissing plaintiff's demand against said defendant be and the same is hereby affirmed.
It is further ordered, adjudged and decreed that the judgment of the lower court dismissing and rejecting plaintiff's demand against defendant Sidney V. Arbour be and the same is hereby affirmed.
It is further ordered, adjudged and decreed that the judgment of the lower court rejecting and dismissing plaintiff's demand against defendant Parish of East Baton Rouge be reversed and set aside and judgment rendered herein in favor of plaintiff Amy D. Toppi and against defendant Parish of East Baton Rouge in the full sum of $4,131.00, together with legal interest thereon from date of judicial demand, until paid. All costs of these proceedings to be paid by defendant Parish of East Baton Rouge.
Affirmed in part, reversed in part and rendered.

*631 On Application for Rehearing.
PER CURIAM.
The defendant Parish most persuasively applies for rehearing, upon the premise, inter alia, that, if the legislature cannot waive governmental immunity from tort liability (Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793; Duree v. Maryland Casualty Co., 238 La. 166, 114 So.2d 594), then neither can the courts.
However, what able counsel overlooks is that the immunity of a municipal governing authority and of most other governmental units is not based upon any constitutional provision, but is a judicially-created doctrine. Pugh, "Historical Approach to the Doctrine of Sovereign Immunity", 13 La.L.Rev. 476 (1953); Fordham and Pegues, "Local Government Responsibility in Tort in Louisiana", 3 La.L. Rev. 720 (1941). Article 3, Section 35, La. Constitution, LSA, simply provides that "Whenever the Legislature shall authorize suit to be filed against the State", certain procedures shall be followed and that "the effect of any authorization by the Legislature for a suit against the State shall be nothing more than a waiver of the State's immunity from suit"; it does not provide that municipalities or other governmental units are immune from tort liability. But cf. Art. 19, Section 26, La. Constitution.
The tort liability of municipal governing authorities for damages resulting from the failure to keep streets and sidewalks in a reasonably safe condition for travel has traditionally not been subject to the defense of governmental immunity, nor to the prerequisite of legislative consent to suits to recover such damages. Carlisle v. Parish of East Baton Rouge, La.App. 1 Cir., 114 So.2d 62, and authorities therein cited. Thus the holdings of the Duree and Stephens cases, above-cited, have no application to the present appeal; for they simply held that due to the wording of Article 3, Section 35, the legislature was not empowered, by waiving the State's immunity, to create a cause of action when non theretofore existed.
The defendant Parish further reminds us that inadvertently we taxed it with "all costs of these proceedings"; whereas under LSA-R.S. 13:4521, as a public body, it is exempted from the payment of court costs except for "stenographers' costs for taking testimony." Our decree must be, and hereby is, amended to limit the liability for costs of the defendant Parish to the stenographer's costs for taking testimony.
As thus Amended, our original decree herein is reinstated,
Rehearing refused.