YARRUT, Judge.
This is a suit to recover $10,481.00 for personal injuries and loss of earnings resulting from a collision between a taxicab, driven by Plaintiff, and a Chevrolet Station Wagon, driven by Defendant (Erwin S. Deutsch). Reference hereinafter to “Defendant” will be to Erwin S. Deutsch.
The elements of damages claimed are: $10,000 for physical pain and suffering, past, present and future; $360.00 for lost wages; and $121.00 for x-rays and doctor bills.
Plaintiff describes his injury and disability as a fracture of the right and left nasal bones, and admits he was discharged one month after the accident.
The accident occurred in the afternoon of January 13th while Plaintiff was driving his Checker Cab Company taxicab in the uptown bound lane of Dryades Street, New Orleans, about to turn into Josephine Street.
Plaintiff alleges that, at that time, Defendant was driving his Station Wagon in the downtown lane of Dryades Street, approaching the intersection of Josephine Street, when Defendant suddenly veered to his left and struck the left front of Plaintiff’s vehicle, damaging his taxicab and injuring him. The negligence charged against Defendant is:
1. Driving in excess of the speed limit;
2. Failing to maintain a proper lookout and control of his vehicle;
3. Failing to see what he should have seen;
4. Driving without regard to the rights, property and safety of others; and
5.Failing to stay in his own lane on a two-lane, two-way street.
Plaintiff further pled that, in the event he should be found contributorily negligent, which he specifically denied, he was prepared to prove that such contributory negligence was not a proximate cause of the accident and that, in any event, Defendant had the last clear chance to avoid the accident but failed to do so.
Defendants denied any negligence on the part of Deutsch, and alleged that the accident was solely and proximately caused by Plaintiff’s negligence or, in the alternative, by his contributory negligence, which negligence consisted of the following acts, to-wit:
1. In driving in an improper lane of travel;
2. In veering from a proper lane across the oncoming lane of traffic to make a left turn on Josephine Street;
3. In driving at an excessive rate of speed;
4. In improperly turning and in turning without any signal whatsoever; and
5. In driving in a careless and reckless manner under the circumstances.
Defendants then filed a Reconventional Demand against Plaintiff and Checker Cab Company (alleging Plaintiff was acting as agent of said Cab Company), for recovery of $400.36 in solido, charging the accident was due solely and only to Plaintiff in driving his taxicab and committing the same acts of negligence described above.
Checker Cab Company filed an answer to the Reconventional Demand denying all charges of Reconvenor, and averring that the accident in question was caused solely as a result of the negligence of Defendant in not having his vehicle under control; in failing to keep a watchful and proper lookout ahead; and in going at an excessive rate of speed, with the plea that, should the Court find Plaintiff was negligent, then, in *116 the alternative, Defendant was guilty of contributory negligence.
The District Judge rendered judgment on the main demand in favor of Plaintiff and against the Defendants, in solido, in the sum of $515.00, with legal interest from date of judicial demand until paid, and for all costs; and dismissed the Reconven-tional Demand. His itemization of the damages was as follows: $105.00 medical expenses; $60.00 for loss of wages; and $350.00 for bodily injury.
Defendants in the main demand and as Plaintiffs in Reconvention have taken this appeal.
Frank Piediscalzo, Jr. answered the appeal for an increase of his award to $2,500 for his injuries, pain and suffering, and to $360.00 for loss of wages; otherwise the judgment appealed from be affirmed.
Our examination of the testimony establishes these facts:
Plaintiff was traveling along Dryades Street in the direction of Jackson Avenue, with a passenger, to a Josephine Street destination. Plaintiff had to make a left turn on Josephine Street and, upon reaching the intersection, brought the taxicab to a stop awaiting an opportunity to make the turn. Dryades Street is a two-way street with only one lane for each direction of traffic with no physical separation between the lanes. At the same time Defendant was driving his car approaching the intersection from the opposite direction. Upon seeing the taxicab of Plaintiff and that it was about to turn, Defendant applied his brakes and skidded into the taxicab in the taxicab’s lane, causing the taxicab to spin around and come to rest with its rear end over the curbing.
Dryades Street, at the site of the accident, is approximately 35 feet wide, allowing some 16 or 17 feet for each lane of traffic. A car was parked on the Defendant’s side of Dryades Street approximately 15 feet from the intersection. At the time, the street was wet from a light drizzle. Defendant admitted he was traveling at a speed in excess of the speed limit, or approximately 25 miles per hour. The police officer who investigated the accident testified that, according to statements made by Defendant immediately following the accident, Defendant was actually traveling at a speed of 30 miles per hour, in excess of the speed limit, on a street with a wet surface.
Plaintiff was traveling along Dryades Street in the opposite direction of Defendant and, upon reaching the intersection of Josephine Street, prepared to make a left turn, signaled a left turn and brought his taxicab to a complete stop in his proper lane of traffic. Defendant saw Plaintiff preparing to turn, applied his brakes and skidded into Plaintiff’s vehicle.
Defendant testified that Plaintiff’s vehicle was more than three feet in his lane of traffic at the time of the impact. This testimony is uncorroborated, hence must give way to the overwhelming evidence to the contrary. Plaintiff testified his vehicle remained in its proper lane up to the time of impact. The police officer testified that he noted the heaviest portion of the scattered debris at the accident site to he-not more than one foot over the center line in Defendant’s lane, which he used to estimate the point of impact, although there was considerable debris on both sides of the street. Plaintiff’s testimony is corroborated by the testimony of Mrs. Dorcian Bienvenu, a witness for Defendant. Although this lady had some difficulty in expressing herself in a precise manner for the convenience of the Court reporter, a careful reading of her testimony reveals the position of the vehicles at the time of impact from the point of view of a disinterested observer.
Under direct examination she testified repeatedly that the collision occurred in the “right” lane of travel and from various statements made in her testimony it *117 can easily be seen that she was referring to Plaintiff’s lane, despite efforts by counsel for defense to obtain contrary testimony. Plaintiff testified his taxicab was stopped waiting for the traffic to clear before making a left turn. Defendant admitted he was traveling at a speed in excess of the stated speed limit on a wet surface and his car skidded approximately 30 feet. The left front side of Defendant’s car struck the left front side of Plaintiff’s vehicle. Dryades Street is approximately 35 feet in width, allowing some 17 feet for each lane of traffic. Even assuming, arguendo, that Plaintiff’s automobile was a few inches over the center line as Defendant unsuccessfully tried to prove; and that the car parked in Defendant’s lane occupied some seven feet of available driving space, Defendant would still have had approximately nine feet in which to pass. Defendant clearly had the opportunity to avoid the collision. Under the doctrine of the “last clear chance,” even if Plaintiff had negligently placed himself in a position of peril, Defendant would still be liable for damages because he could have avoided the accident after discovering Plaintiff’s peril by the exercise of reasonable care. Evans v. Thorp, La.App., 175 So.2d 418; Robards v. American Automobile Insurance Co., La.App., 128 So.2d 44; Deck v. Page, La.App., 77 So.2d 209.
With regard to quantum, Defendant complains that the District Judge improperly allowed medical testimony concerning neck injuries sustained by the Plaintiff because such evidence went beyond the pleadings. In his petition Plaintiff described his disability as follows: “Fracture of the right and left nasal bones.” Objection was raised by Counsel for Defendant when the attending physician testified that he noted an injury to Plaintiff’s neck muscles when he examined Plaintiff. We believe Defendant is correct in his contention that we disregard this testimony because Plaintiff did not make a motion to amend the pleadings after the objection. See LSA-C.C.P. art. 1154. Therefore we will only consider Plaintiff’s facial injury.
Dr. A. W. Bohmfalk, the attending physician, testified he first saw Plaintiff on January 26, 1965 or approximately two weeks after the accident; that Plaintiff had suffered fractures of the left and right nasal bones and that he still suffered from swelling of the upper mouth and the entire nose area. Plaintiff was discharged on February 11, 1965, but Dr. Bohmfalk testified that Plaintiff could suffer residual symptoms anywhere from two to six weeks, thus corroborating Plaintiff’s testimony that the swelling ha.d not completely subsided until about six weeks after the accident. We find the award of $350.00 for pain and suffering is inadequate. A $2,000 award for nose fractures, where there is only slight permanent residual nasal deformity (which Plaintiff did not suffer in the instant case), has been held to be proper. Carlisle v. Parish of East Baton Rouge, La.App., 114 So.2d 62; Burley v. Chase, La.App., 76 So.2d 593; and Blanchard v. New Orleans Public Service, Inc., La.App., 25 So.2d 741. In French v. Mathews, La.App., 78 So.2d 197, a nine-year-old girl was awarded $1,500 for a nose fracture, but the abrasions of her face were more severe than those suffered by Plaintiff. Therefore, under the circumstances, we believe that an award of $1,000 for pain and suffering would be neither excessive nor inadequate in the instant case.
Plaintiff claims $360.00 for loss of wages based on the allegation that he could not work for four weeks following the accident, and that he had driven a Checker Cab six or seven days a week earning $15.00 per day. However, his testimony concerning his employment with Checker Cab Company is contradictory and equivocal. Regarding this employment, he testified as follows:
“Q. Didn’t you just tell me under cross-examination that you worked for *118 Checker Cab from Friday to Sunday?
“A. From Friday to Sunday, wait a minute, you said something about me working when I started, when I had the accident I was working seven days a week for Checker Cab, I told you that I was working part time before that from Friday to Sunday, before the accident I always worked part time with Checker Cab except in this instance I was working seven days a week because I was off my regular job.
“Q. In other words, this particular week you were working seven days a week ?
“A. Right.
“Q. But you hadn’t been doing that for two weeks running, had you?
“A. For two weeks, I don’t recall how long its been—
“Q. Probably it wasn’t two weeks?
“A. No, before the accident it wasn’t no two weeks, it was only about— oh, I don’t know exactly how many days it’s been.
“Q. After you went back to work for Checker Cab Company after this accident did you start working seven days a week for them ?
“A. No, I wasn’t.”
However, he previously testified his main job was that of a truck driver, and that he had performed in this capacity until about three or four days before the accident. He produced no evidence of his earnings as a truck driver, although he testified he filed an income tax return the previous year, which was never introduced. Therefore, there is no corroborating evidence or adequate proof of loss of earnings. Jenkins v. Audubon Insurance Company, La.App., 110 So.2d 221; Jobe v. Credeur, La.App., 125 So.2d 487.
Moreover, Plaintiff’s testimony, regarding the extent his disability prevented his working, would make any award for lost wages highly speculative. Concerning this matter, he testified as follows:
“Q. What bothered you after the accident mostly, was it your nose?
“A. Yes, sir.
“Q. Did this prevent you from driving a truck or a cab ?
“A. Well, it wasn’t hurting me that bad, I mean, at times it would.”
Therefore the judgment of the District Court is increased to $1,105.00 ($1,000 for pain and suffering and $105.00 for medical expenses) and the award for loss of earnings is disallowed.
The judgment of the District Court is therefore amended in accordance with the above, and otherwise affirmed; Defendants to pay all costs in both courts.
Judgment amended and affirmed.